RICHARD RAGAN *vs.* H. H. GAITHER.—*December* 1841.

When, to a declaration the defendant pleads several pleas, one of which only is an issuable plea, the others concluding with a verification, and without requring a replication, he consents to a jury being sworn, this is a waiver of the other pleas.

G. sold R. a lot for $700—agreed to make a pavement in front of the property, and to clear all incumbrances; and was to receive the $700 on giving a good and sufficient deed. The contract was dated 17th June 1836, and R. was to receive the rent from 1st July ; but if the deed was not given by that day, G. was to receive the rent until he gave a good deed. *Held*, that the payment of the purchase money and conveyance of the property were to be acts of concurrent performance, and that a declaration upon the contract, alleging that the plaintiff was at all times ready to execute, and did execute and offer to deliver a good and sufficient deed before the action was instituted, was after verdict equivalent to an allegation of seizin in the plaintiff, the vendor.

On a motion in arrest of judgment, the verdict will be supported by every fair legal intendment, and the court will assume, that every thing was proved of which it is necessary for the plaintiff to have offered proof, to establish the truth of the allegations contained in his declaration.

Where evidence in relation to a claim for money was offered by both parties, it is error in the court to instruct the jury, that upon the foregoing statement of facts, the plaintiff is entitled to recover the whole amount of his demand; the truth of the facts, offered in evidence should have been left to the jury.

Where deeds constitute a material part of the plaintiff's case, and are not inserted in the bill of exceptions, and the correctness of the county court's instruction depends upon the effect of such deeds, this court, in the absence of such documents, will not assume that the county court was warranted in giving a hypothetical direction in favor of the plaintiff.

Where a vendor sold land clear of all incumbrances, and at the time of his action brought for the purchase money, he held but an equitable title, sub-

Ragan *vs.* Gaither.—1841.

ject to an incumbrance, and the fee was in a third person, and the title re-
mained in that condition until the time of trial, the plaintiff cannot recover.

What length of time in neglecting to perform a contract is unreasonable, and
would authorise its recision at the will of the party complaining of such
neglect, is a matter of law, to be determined by the court.

A prayer for an instruction to the jury ought not to be so framed as to submit
a question of law to their determination, and the refusal to grant a prayer
so framed, is not error.

APPEAL from *Washington* County Court.

This was an action of trespass upon the case, brought on
the 14th February 1829, by the appellee against the appellant.

The plaintiff declared as follows—"For that whereas here-
tofore, to wit, on the 17th June 1836, &c., the said plaintiff,
at the special instance and request of the said defendant, bar-
gained with and agreed to sell the said defendant, a certain
house and lot on *Potomac street* in *Hagerstown,* adjoining the
present residence of the said defendant, and the said parties re-
duced the said contract to writing, as follows, to wit:

I hereby acknowledge that I have sold to *Richard Ragan* the
half lot adjoining him, formerly belonging to *Mr. Heifly,* for
seven hundred dollars, and that I am to make the pavement in
front of said property, and to clear all incumbrances. The
said *Richard Ragan* to receive the rent of said property from
the first day of July, and I am to receive the seven hundred
dollars, on my giving him a good and sufficient deed. If the
deed is not given by the first of July, I am to receive the rent
of said property until I give him a good deed.

H. H. GAITHER.

Test,—*Charles MacGill.*

June 17th 1836. I accept of the the above agreement.

RICHARD RAGAN.

And the plaintiff in fact says, that after the said contract
was thus reduced to writing, and signed by the parties in man-
ner and form aforesaid, to wit, on the tenth day of July in the
year aforesaid, at, &c., the plaintiff did make the pavement in
front of the said property, to wit, at &c.; and although the
said plaintiff hath always been willing and ready to clear said
property of all incumbrances, and to give said defendant a good

and sufficient deed for the same, if the said defendant would pay to the plaintiff the purchase money thereof as aforesaid, and although the plaintiff, before the issuing of the original writ in this cause, had actually prepared and executed to the said defendant, his heirs and assigns forever, a good and sufficient deed for the said property, and offered and proposed to the said defendant to deliver the deed to him, and to clear the said property of all incumbrances, if the defendant would pay the said purchase money to the plaintiff as aforesaid; yet the said defendant did then and there refuse to pay the said purchase money, or any part thereof. And the plaintiff in fact says, that the defendant hath wholly disregarded his said contract, and hath always heretofore refused and neglected to perform the same, and doth still refuse, to wit, at, &c.

*2nd Count.* And whereas heretofore, to wit, on the said 17th June, in the year of our Lord 1836, at, &c., by a certain other instrument of writing, signed by the said *Richard Ragan* and the said *Henry H. Gaither,* bearing date the day and year aforesaid, the said plaintiff sold to the said *Ragan* a certain other half lot of ground adjoining the property of the said *Ragan,* which formerly belonged to *Mr. Heifly,* for the sum of seven hundred dollars, to be paid by the said *Ragan* to the said *Gaither* therefor. And it was further agreed between the said parties, in and by the said instrument of writing, that the said *Gaither* should make the pavement in front of the said property, and should clear the said property of all incumbrances. And it was further stipulated and agreed by and between the said parties, in and by said instrument of writing, that the said *Gaither* should receive from the said *Ragan* the said sum of seven hundred dollars, upon his giving to the said *Ragan* a good and sufficient deed for the said property, to wit, on the day and year last aforesaid, at, &c. And the said *Gaither* in fact says, that after the making of the said agreement, to wit, on the tenth day of October eighteen hundred and thirty-six, at the county aforesaid, he did make the said pavement in front of the said property. And although the said plaintiff hath at all times, from the making the said agreement to

the time of the issuing the original writ in this cause, been ready and willing to execute and deliver to the said *Ragan* a good and sufficient deed for the said property, according to this said agreement in that behalf, and to clear the said property of all incumbrances; and although the plaintiff before the impetration of the original writ in this cause, did prepare and execute a good and sufficient deed for the said property to the said *Richard Ragan,* his heirs and assigns forever, and did offer and propose to deliver the same to the said *Richard Ragan,* and to clear the said property of all incumbrances, if the said *Ragan* would pay to the said plaintiff the said sum of seven hundred dollars for the same, yet the said *Ragan* wholly refused to do so, and the said defendant did not, nor would pay to the plaintiff the said purchase money due for the same. And so the plaintiff saith that, &c., &c.

The defendant pleaded, 1st. That he did not undertake or promise in manner and form as the said *Gaither* hath above thereof complained against him, and of this he puts himself upon the country.

2nd. That the said *Gaither* ought not to have or maintain his aforesaid action thereof against him, because he says, that the agreement of the said *Gaither to clear said property of all incumbrances,* and give the said *Ragan a good and sufficient deed* therefor, were conditions to be performed by the said *Gaither,* precedent to the payment by the said *Ragan* of the said sum of seven hundred dollars, mentioned in the said contract, and the said *Gaither* did not perform the said conditions in manner and form according to said agreement, and this he the said *Ragan* is ready to verify.

3rd. That the said *Gaither* ought not to have or maintain his aforesaid action thereof against him, because he says, that for a long and unreasonable time after the said agreement was entered into, to wit, until the —— day of November 1838, the said *Gaither* neglected to perform the said agreement on his part, and did not clear off incumbrances, and give the said *Ragan* a good and sufficient deed; whereupon the said *Ragan,* on the day and year aforesaid, at *Washington* county aforesaid,

rescinded the said agreement, of which the said *Gaither* had notice, and this the said *Ragan* is ready to verify. Wherefore, &c.

No replications appear to the second and third pleas.

A jury was then empannelled and sworn, who found that the said *Richard Ragan* did undertake and promise, in manner and form as the said *Henry H. Gaither* above against him complains, and they assess the damages of the said *Henry H. Gaither*, by reason of the non-performance of the promise and assumption aforesaid, to the sum of seven hundred and fifty-seven dollars and twenty-five cents, current money.

The defendant *Ragan,* then moved in arrest of judgment, because the plaintiff had not shewn a sufficient ground of action in his declaration. He had not averred a performance of the contract on his part, nor has he averred a positive offer to perform, which the defendant refused, hindered or discharged him from doing. It is not stated that defendant refused to accept a deed, and it does not appear that he would not have accepted a deed, if one had been tendered; nor is it averred that plaintiff had paid off incumbrances, or that he offered to pay them off, and defendant hindered or discharged him from his obligation to do so. Nor is there any other sufficient excuse averred in the non-performance of the conditions and stipulations on the part of the plaintiff to be performed.

The county court overruled the motion in arrest, and rendered judgment upon the verdict for the plaintiff.

FIRST EXCEPTION.—The plaintiff to support the issue on his part joined, offered in evidence the agreement set forth in the declaration; and then proved, that *Peter Heflich* was seized in fee of the half lot of ground and premises described in said agreement; that the said *Heflich* afterwards died, having previously made in due form of law his last will and testamentt in which he appointed *Daniel Carver* and *John H. Smith* the executors thereof, with full power to sell said property mentioned in said agreement; that said executors took out letters testamentary on said will, and sold said property to *Dr. William MacGill*, who paid them all the purchase money except

a balance of about $266; that after the sale of said property to said *MacGill*, the said *Smith* became a lunatic; that *Mac-Gill* sold his said right to the said property to the plaintiff; that no deed was made by said executors to said *MacGill*, because said balance of the purchase money was not paid; that after the death of said *MacGill*, and before the sale by plaintiff to defendant, the following proceedings were had in Washington county court as a court of equity, to authorise the said *Carver*, as the sole acting executor, to convey said property specified in said agreement; and on the 23rd November 1837, a decree was obtained accordingly.

The plaintiff further proved by the said *Daniel Carver*, a competent witness, that on the 9th day of November 1838, he executed and acknowledged the following deed. (Here follows a deed from *Carver* to the plaintiff.) The plaintiff further proved, that on the 16th day of November 1838, he executed and acknowledged the following deed. (Here follows a deed from *Gaither* to the defendant.) The plaintiff further proved by *Daniel Carver*, that on the said 16th day of November 1838, or in a few days thereafter, the plaintiff called on him to go with him the plaintiff to the defendant, for the purpose on the part of the plaintiff, of tendering to the defendant the conveyance of the title to said property; that they did call on the defendant, and the plaintiff then offered to deliver to him the said deed, and the said *Carver* to deliver to the plaintiff the said deed from him to the plaintiff, so as to convey the title to the defendant, if the defendant would pay to him on such delivery of said deeds, the amount of the purchase money mentioned in said agreement; that the defendant made no objection to the title of said property, but asked the said *Carver* if he the said *Carver* would take his, the defendant's note to him the said *Carver*, for the said balance of the said purchase money due to said *Carver* as executor as aforesaid, to which proposition the said *Carver* agreed. That the defendant further said, that after paying the amount to said *Carver*, and deducting the amount of an account due him from plaintiff, there would be about $300 balance due to plain-

tiff, which balance of the purchase money he would pay to said *Carver* and the plaintiff, provided the plaintiff would put the fence around the said property in the same condition it was at the date of said contract, but that the plaintiff refused so to do. The plaintiff further proved by *Richard Wise*, a competent witness, that some time before the date of said deeds, he was employed by the plaintiff to make the pavement in front of said property; that he made the same, and was paid therefor by the plaintiff, and that at the time he was making the same, the defendant was several times present and gave directions in relation to the making of the same, and was satisfied therewith. The defendant then on his part proved by the said *Carver*, the said witness of the plaintiff, that the plaintiff has not and never had a deed or legal title to the premises mentioned in said agreement; that after the said decree was rendered, but before the said deeds were offered, about $266 being due and unpaid, and the plaintiff refusing to pay said balance, alleging that nothing was due, the witness had refused to make him a deed, and that when said deeds were offered by the plaintiff and witness to the defendant, he, the defendant, did not look at or say any thing about the deeds, but he agreed to take the property, provided the plaintiff would place the fence around it in the same condition it was in when said agreement was made, and offered to leave it to two men to be selected by the plaintiff, whether he the defendant should take the property in its then condition, or the plaintiff should place it in the condition it was in at the date of the agreement; and the plaintiff refusing to do so, they parted, the defendant refusing to accept the deed. That though the witness executed and acknowledged the aforesaid deed to plaintiff, it was never delivered; that he had no knowledge that the defendant has ever had possession of the property, or any part of it; that after the contract had been made, and before a deed was offered, the fences had decayed very much, and the property was otherwise delapidated, and that the enclosure had been very indifferent for years before the contract; that the legal title to the said property is still in him the said *Carver*, as executor as aforesaid, and the plain-

tiff has never paid the $266 due on said property. Whereupon the defendant prayed the court to instruct the jury, that if they believe from the testimony, the title in the property never was conveyed to defendant, and the defendant never had possession of the same, but the title and possession remained in the same situation they were in at the date of the contract, the plaintiff is only entitled to recover the depreciation of the value; which direction the court refused to give, but were of the opinion, and so instructed the jury, that upon the aforegoing statement of facts, the plaintiff is entitled to recover the whole amount of the purchase money; to which instruction of the court (T. BUCHANAN, A. J.,) to the jury, the defendant excepted.

SECOND EXCEPTION.—In addition to the testimony stated in the aforegoing bill of exceptions, the defendant offered to prove by *Charles MacGill,* a competent witness, that it was understood by the parties at the time of making their contract, that the said deed should be given by the plaintiff within the year for which the property had been rented; which testimony the court rejected as illegal and incompetent. The defendant excepted.

THIRD EXCEPTION.—In addition to the testimony stated in the aforegoing bill of exceptions, (all of which is made a part of this the defendant's third bill of exceptions,) the defendant proved by *Daniel Carver,* the aforesaid witness, that for one or two years after the said contract was entered into by the plaintiff and defendant, the defendant was anxious to obtain the title for the said property, and often talked to him upon the subject, and requested him to speak to the plaintiff and prevail on plaintiff to pay the sum due by him to witness on said property, in order that he plaintiff might obtain a title which he could convey to defendant in performance of the contract; that during part of this time when defendant was urging a performance of the contract, a title could have been conveyed by witness; that defendant requested the said *Carver* to tell the plaintiff that he wished the contract performed, which witness accordingly did, but that plaintiff during all this time refused to pay the money due by him on said property, and there-

fore witness would not make him a deed; and the said *Carver* further proved, that for a considerable time before plaintiff went to defendant with a deed, he had heard nothing from defendant in relation to his contract with plaintiff, but he thinks plaintiff told him defendant had refused to accept the property, but he has no positive recollection on the subject. Whereupon the defendant by his counsel prayed the court to instruct the jury, that if they believe from the testimony the plaintiff had neglected to perform or offer to perform his contract for an unreasonable time, the defendant had a right to rescind his contract; and if they believe that the defendant had rescinded the contract, or the plaintiff on the request of defendant refused to perform his contract, the offer of the deed could not revive it, and they must find for the defendant; which instruction the court refused to give, but were of opinion, and so directed the jury, that the agreement of the defendant to take the property at the price stated in the agreement, if the plaintiff would put it in the state it was in at the date of the contract, was an acknowledgment by the defendant that the contract was still subsisting, and the plaintiff is entitled to a verdict for the purchase money. To which direction of the court to the jury the defendant excepted.

The cause was argued before BUCHANAN, C. J., STEPHEN, ARCHER, DORSEY, CHAMBERS, and SPENCE, J.

By JERVIS SPENCER for the appellant.

In support of the motion for arrest of judgment, filed in the above case, and for reason why the decision of the county court should be overruled, the undersigned respectfully submits—That there is no sufficient averment in the declaration of the performance, or excuse of performance of conditions precedent to be performed by the plaintiff. The offer to perform must not be a qualified offer, and there is no sufficient refusal stated on the part of the defendant to permit plaintiff, to make and deliver him the deed. The refusal averred, is to pay the money, not to accept the deed. *See Sudgen's Vendors*, 180. 1 *Chitty's Pleadings*, 284. See also the forms in *Harris's Entries, Chitty, &c.*

Non-performance of condition precedent, being not averred, objectionable in arrest of judgment. *Hotham vs. East India Co.* 1 *T. R.* 367. Where an excuse stated for non-performance of condition precedent, which was not sufficient in law, objectionable upon writ of error. *Worley vs. Wood and al.* 6 *East's Rep.* 342.

The instruction of the court in the first bill of exceptions is wrong for the following reasons:

1st. That though the appellee made a *qualified* and not an absolute tender of the title, as long as the title and possession had not changed, the only remedy for the recovery of the whole of the purchase money would have been by a bill for a specific performance. And at law the measure of damages could only be the injury sustained by the plaintiff for the loss of his contract, and not the whole purchase money. "*If either vendor or vendee refused to perform the contract, the other party may bring an action* for breach of contract, or *file a bill for specific performance.*" *Sudgen's Vendors,* 2nd *American* 5th *London edition, page* 164. This then was clearly a case for specific performance. On pages 153 and 154, same book, the author says, "We are to consider the rules by which equity is guided in granting a specific performance, with reference to the agreement itself." "The original foundation for these decrees was simply this—that the damages at law would not give the party compensation to which he was entitled, that is, would not put him in a situation as beneficial to him, as if the agreement were specifically performed. On this ground the court in a variety of cases has refused to interfere, when from the nature of the case, the damages must necessarily be commensurate with the injury sustained." Thus we see that this is a proper case for a bill for a specific performance, and on the ground that damages at law would not be adequate. Yet the decision of the court below has gone greatly beyond the power of the Court of Chancery in deciding a specific performance, by allowing the plaintiff to recover the whole amount of the purchase money, though the title to the property was in a third person not a party to the suit, and the plaintiff had complied with no material part

of his contract. See *Fonblanque's Equity*, 1st vol. 3rd edit. p. 29, 30.

*2nd Reason.* The plaintiff had no title to said lot, the title being in a third party, not affected by the proceedings in this case, upon whom the defendant would have no right to call for a conveyance after satisfying the plaintiff's judgment. *Sugden's Vendors*, 176.

*3rd Reason.* The plaintiff has not proved an actual tender of the title and refusal on the part of the defendant. If the vendee is going to bring suit for the purchase money, he must make an unqualified offer of the deed. He must actually do what he has to perform, or be refused or hindered by the vendee, before he can by action demand a performance on the part of the vendee. *Sugden's Vendors*, 180. *Chitty on Contracts*, 274.

*4th Reason.* The court directed the jury, that upon the statement of facts, the plaintiff was entitled to recover the whole amount of the purchase money, seven hundred dollars, when by the said statement of facts, there was only three hundred dollars due to the plaintiff; and there was still an outstanding incumbrance of $266, which would be a lien on said property after the judgment should be satisfied.

*5th Reason.* The plaintiff did not shew a right to recover the purchase money, inasmuch as he had not shewn a compliance with his part of the contract in clearing said property of incumbrances.

2nd bill of exceptions abandoned.

Upon the third bill of exceptions it is submitted, that the court erred in their instruction. Because there was at least sufficient evidence to go to the jury, that the contract had been rescinded. "Non-performance of condition precedent for an unreasonable time, if no period was provided, especially if there has been *a refusal to complete* it, entitles the defendant to abandon the contract. "*Chitty's Contracts* 275, 2nd American Ed. The witness proves a decided refusal on the part of plaintiff to perform his contract, when he had an opportunity of doing so, and when the witness at request of defendant,

and in his behalf, desired the plaintiff to perform. The length of time which had elapsed after the said request and refusal, during which nothing was said of it, was a circumstance from which the jury, connecting it with other facts, might infer that it was rescinded. These were at least facts for the jury, and if the conversation which took place at the time the title was offered, rebutted the inference of time, and the refusal of the plaintiffs, the jury ought to have decided on the preponderance of the testimony. But it is submitted, that the conversation was not of so decided a character as to authorise the court to give so positive an instruction. The offer of the defendant to take the property at the price stated in the agreeemnt, if the plaintiff would do certain things, may have been made with reference to a new contract, instead of being a recognition of the old; and it was competent for the jury under the circumstances so to regard it. It would scarcely be reasonable that one party to a contract, after refusing to perform his part of the contract, should keep the same open for a series of years; and when he finds it to his interest to carry the agreement into effect, should offer to perform, and because there is no positive evidence, the defendant gave him notice of rescinding the agreement, exclude the defendant of all the inferences deducible from the lapse of time and silence of the parties.

It is submitted, that the default in this case was altogether on the part of the plaintiff;—that he refused to perform when thereto requested by the defendant;—that two years and five months was two long to keep a contract open, which it is apparent on its face, was to be performed in less than one year, and when there was stong circumstances from which to infer an abandonment of the contract. The defendant had a right to consider it at an end on the refusal of plaintiff. *Giles vs. Edwards*, 7 *D. & E.* 181.

W. Price for the appellee contended—

*First*, in reference to the motion in arrest of judgment. The grounds relied upon are, that plaintiff has not shewn a sufficient ground of action; that he has not averred a performance

of the contract on his part; nor has he averred a positive offer to perform, which the defendant hindered or discharged him from doing. It is not stated that the defendant refused to accept a deed, and does not appear that he would not have accepted a deed if one had been tendered. Nor is it averred that plaintiff had paid off incumbrances, or that he offered to pay them off, and defendant hindered or discharged him from his obligation to do so, &c.

The proper mode of ascertaining what the plaintiff should aver, is to look at the written contract between the parties. By comparing the *nar* with the instrument on which the action is founded, it will be seen that all proper averments are made, and abundantly so, on a motion in arrest of judgment.

The question is very different from what it would be on demurrer. The jury have passed upon the case and rendered their verdict for the plaintiff, and that verdict will be supported by every fair legal intendment. The court will suppose every thing proved at the time, which was necessary to be proved, unless the contrary should be made to appear on the record. *Bull vs. Steward,* 1 *Wil.* 255.

The true question is, whether the plaintiff has presented by his declaration, a good case defectively stated, in which case all defects are cured by verdict; or, has he presented a case so groundless in law, that no statement would make it good. In the one case, it is a fair presumption after verdict, that all defects either in form or substance, were supplied by proof at the trial, since the law will not suppose that the jury, under the inspection of the judge, would find a verdict for the party unless he had proved every thing necessary in law to make out his case. 3 *Bl. Com.* 394. But if the plaintiff sets forth a cause of action or title, wholly defective in itself, it will not be supposed that he proved it, because no proof would make it good. See 1 *Sel. P.* 499, 500.

The declaration in the case at bar would be good on demurrer.

*2nd.* The questions reserved on the bills of exception. It will be seen upon examining the first exception, that the title

tendered by *Gaither* was a good title, and that *Ragan* was willing to receive it.   That there was but one incumbrance upon the property, and *that* it was understood *Ragan* was to pay in part of his purchase.   The balance of the purchase still due was ascertained and agreed upon between the parties.   The whole contract was about to be closed in a manner acceptable to both parties, *when Ragan made the demand of Gaither, that he should repair the fence around the lot, which Gaither refused to do.*  And both parties insisting, they separated without doing any thing.   It is clear that *Ragan* had no right to insist upon these repairs under his contract.

The point raised by this bill of exceptions is thus stated—that if the title to the property was never conveyed to the *de*fendant, and the defendant never had possession of the same, but that the title and possession were in the same situation they were in at the time of the contract, the plaintiff was only entitled to recover the depreciation of the value.

The prayer was an attempt to circumscribe the power of the jury within too narrow limits.   It was certainly open for them to consider the depreciation in the value of property.   But they could go beyond that and consider also the disappointment to which the plaintiff had been subjected, as well as the inconve nience and loss occasioned him by a failure to pay the money when he had every reason and right to expect it.   A man may be so circumstanced, that such a disappointment would be equivalent to absolute ruin to him; and yet, if this prayer is correct, no jury could give him damages, even when it has been occasioned by the wilful violation of a covenant, the performance of which would have saved him and kept him whole.

Second exception abandoned.

THIRD EXCEPTION. This exception raises the simple question, whether the jury were authorised under the circumstances, to find that the contract had been rescinded, of which there can be no pretence under the circumstances.

J. SPENCER in reply.

It is submitted that the authorities referred to, in support of

the decision of the court below upon the motion in arrest of judgment, do not apply to the case. Those authorities refer to the cases of omission in the averments, which may be supplied by inference or intendment, and not to cases like the present, where the statement in the declaration negatived the idea of a performance by the plaintiff. According to the authorities— *Sugden's Vendors,* 180; 1 *Chitty's Pleading,* 284, and the forms in *Harris's Entries and Chitty*—the plaintiff should have averred an absolute and unqualified offer to perform his part of the contract—but his averments show, that he only made a conditional offer. His averments preclude all inference of his having done, what was necessary to support his action, and the authorities quoted, if they have any application, are in favor of the appellant.

With respect to the second branch of the appellee's argument, it is submitted, that there is no evidence that *Gaither* ever agreed to allow *Ragan* an abatement for the incumbrance of $266. On the contrary, it is expressly proved that *Gaither* refused to pay that sum, alleging that nothing was due. The conversation between *Ragan* and the witness, *Carver,* in the presence of *Gaither,* in which *Carver* agreed to take *Ragan's* note for the balance of the purchase money due by *Gaither,* if *Gaither* agreed to do it, so far from being an acknowledgment of the original contract, was itself a new and independent contract; and if *Gaither* did not agree to it, there can be no pretence of his having performed his contract.

The counsel for the appellee has confined his remarks to the refusal of the court to grant the prayer of the defendant. It is submitted, that if the court were right in overruling the prayer of the defendant, they were wrong in giving the broad and positive instruction in favor of the plaintiff.

DORSEY, J., delivered the opinion of the court.

The defendant in this case pleaded three several pleas. The first of which tendered the issue which was tried by the jury. The two latter concluded with a verification, and the benefit thereof was waived by him, he having gone to trial without

requiring any replication thereto, or causing any issue to be joined thereon. The jury having rendered a verdict for the plaintiff, the defendant moved in arrest of judgment, on account of certain alleged defects in the plaintiff's declaration, to none of which does it appear to be obnoxious.

The first reason assigned for arresting the judgment is, that the plaintiff below has not shown a sufficient ground of action in his declaration. We think the declaration does set out a cause of action, sufficient after verdict to warrant the rendering of a judgment thereon. It states according to both its tenor and effect, the agreement between the parties. It alleges that the plaintiff had at all times been ready and willing to execute and deliver a good and sufficient deed for the property sold, according to the agreement; and that the plaintiff did execute such a deed, and offer to deliver it to the defendant below, and to clear the property of all incumbrances, if the defendant would pay to the plaintiff the purchase money stipulated in the agreement; and that the defendant wholly refused so to do. It is true that the plaintiff does not in express terms make the usual allegation of his seizin in fee of the property sold, but he charges what after verdict, even if not before, is a sufficient averment of seizin. He states that he was at all times ready to execute, and that he did execute and offer to deliver a good and sufficient deed for said property before the present action was instituted. To sustain this averment before the jury, the plaintiff must have proved that he was seized in fee of the property, or it was impossible that he could have been ready to execute a good and sufficient deed for its conveyance. On a motion in arrest of judgment, the verdict will be supported by every fair legal intendment, and the court will assume that every thing was proved, of which it is necessary for the plaintiff to have offered proof to establish the truth of the allegations contained in his declaration.

The other reasons assigned in arrest of judgment are, that the plaintiff "has not averred a performance of the contract "on his part, nor has he averred a positive offer to perform, "which the defendant refused, hindered, or discharged him

"from doing." That "it is not stated that defendant refused to accept a deed," or "that he would not have accepted a deed if one had been tendered; nor is it averred that plaintiff had paid off incumbrances, or that he offered to pay them off, and defendant hindered or discharged him from his obligation to do so, nor is there any other sufficient excuse, averred in the non-performance of the conditions and stipulations on the part of the plaintiff to be performed."

There is nothing in any of these reasons which would have authorised the court to arrest the judgment. There is nothing in the contract of the parties requiring the plaintiff to make an averment of performance, or a positive, or unconditional offer of performance on his part. By the terms of the agreement the payment of the purchase money, and conveyance of the property, were to be acts of concurrent performance. The seven hundred dollars were to be paid on a good and sufficient deed being given. The declaration alleges an offer by the plaintiff to the defendant of a good and sufficient deed of conveyance, clear of all incumbrances, on condition of the purchase money being paid by the latter to the former; and that the defendant refused to accept the order. The pavement required by the contract having been completed, and the aforesaid offer and refusal having been also distinctly stated in the declaration, no further performance, or offer of performance need be alleged, to enable the plaintiff to prosecute the present action, or to sustain the verdict which has been rendered by the jury. The county court therefore correctly overruled the motion in arrest of judgment.

The opinion of the court as set forth in the first bill of exceptions, it is alleged, is erroneous, because it refused to instruct the jury, that if they found the title in the property had not been conveyed, nor possession thereof delivered to the defendant below, but that both title and possession remained in the appellee, as at the date of the contract, that the plaintiff below was only entitled to recover the depreciation of the value of the property sold; and that a recovery of the whole purchase money could only be effected by a bill in equity for a

specific performance of the contract—and as an authority to that effect, *Sugden on Vendors*, 164, was referred to. But the reference does not sustain the principle which it was offered to establish. It states that "if either vendor or vendee, refused "to perform the contract, the other may bring an action for "breach of contract, or file a bill for a specific performance; "although it appears to have been formerly thought, that as the "vendor only wants the purchase money, his remedy was at "law." Thus clearly intimating, that in an action at law, where the vendee refuses to perform the contract, a recovery could be had against him for the whole of the purchase money.

The opinion of the county court however is erroneous upon a different ground. Instead of submitting the verity of the facts to the finding of the jury, it assumed their truth, and peremptorily instructed the jury, "that upon the aforegoing statement of facts, the plaintiff is entitled to recover the whole amount of the purchase money." We cannot upon the first bill of exceptions affirm the judgment of the county court upon another ground. The two deeds which show the appellees offer of performance of his part of the contract, are left out of the bill of exceptions, and this court are consequently incompetent to say, that the court below was warranted in giving such an instruction, had it even left to the finding of the jury, the truth of the statement of facts upon which their opinion was based.

But the opinion of the county court is erroneous on a yet more important ground. According to the testimony in the cause, it not only did *not* appear, that the appellee was seized in fee, clear of incumbrances, of the land for the purchase money whereof the suit was instituted; but the fact was, that the fee simple estate was in a third person; the appellee holding nothing but an equitable interest subject to an incumbrance. In such a case he could not only, *not* recover damages on account of the depreciation of the property sold, but he could recover nothing, not possessing such a title as he had stipulated to convey on receipt of the purchase money. To maintain the present action the appellee must at least prove at the trial that he

Lucas *et al. vs.* The Lottery Commissioners.—1841.

is seized of such an estate, as by his contract he stipulated to convey. 2 *Phil. Evid.* 63. *Thompson vs. Miles,* 1 *Esp. N. P. Ca.* 184.

The second bill of exceptions has been abandoned.

We think the court below was right in refusing the defendant's prayer in the third bill of exceptions, for an instruction to the jury, that if they believe from the testimony the plaintiff had neglected to perform his contract for an unreasonable time, the defendant had a right to rescind his contract, and if they believe the defendant had rescinded the contract, or the plaintiff on the request of the defendant refused to perform his contract, the offer of the deed could not revive it, and they must find for the defendant. It called upon the court to submit to the jury the finding of a matter of law, which it was the province of the court, and not the jury to decide, what length of time in neglecting to perform a contract, is unreasonable, and would authorise its re-scission, at the will of the party complaining of such neglect, is a matter of law to be determined by the court, and not by the jury. The county court therefore correctly refused to submit the determination of that question of the jury. But it committed the same errors in its opinion given to the jury in this bill of exception, which we have imputed to its opinion in the first bill of exceptions.

Dissenting from the opinions given by the county court in the *first* and *third* bill of exceptions.

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**